UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA PODREBARAC, | |
| Plaintiff, | No. 21 CV 2552 |
| v. | Judge Lindsay C. Jenkins |
| DENIS McDONOUGH, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

In a suit against her former employer, Plaintiff Rita Podrebarac alleges age-based discrimination under the ADEA and retaliation under Title VII and the ADEA against Defendant Denis McDonough, Secretary of the United States Department of Veterans Affairs ("McDonough" or "the VA"). [Dkt. No. 1.] Before the Court is the VA's summary judgment motion. [Dkt. No. 35.] For the reasons stated below, the Court grants the VA's motion for summary judgment. [*Id.*] A final judgment consistent with Federal Rule of Civil Procedure 58 will enter in favor of Defendants and against Plaintiff. Civil case terminated.

1

I.   Background

   A.   Factual Background

Rita Podrebarac worked as a licensed practical nurse ("LPN") for the Edward Hines, Jr. Veterans Administration Hospital ("Hines Hospital") from 2009 to October 25, 2019. [Dkt. No. 37 at ¶ 1.] At the time of her hiring, Podrebarac was forty-one years old. [*Id.*]

As an LPN, Podrebarac was tasked with "identifying and responding to the patient's need for medication and equipment-assisted care, recognizing urgent or emergent patient care situations (and seeking assistance from a registered nurse or doctor and initiating appropriate emergency interventions), and preparing and administering prescribed medications (including intramuscular or intravenous medications)." [*Id.* at ¶ 5.] LPNs like Podrebarac were further expected to call patients with clinical reminders, conduct health screenings, take vital signs prior to being seen by a physician, draw blood for laboratory testing, run electrocardiogram ("EKG") testing, administer injections, assist with transfers to the hospital, and cover other LPNs' shifts and tasks as necessary. [*Id.* at ¶¶ 6–7.]

In the fall of 2016, Podrebarac was assigned to Clinical Nurse Manager Kitty Thomas's team. [*Id.* at ¶ 8.] While working in this assignment, in May of 2017 at Podrebarac's mid-year review, Thomas rated Podrebarac's performance as "needing improvement." [*Id.* at ¶ 9.] Around the same time, in May of 2017, Podrebarac was suspended for one week for refusing certain patient care tasks and failing to follow instructions on clinical reminders. [*Id.* at ¶¶ 10–12.] Over the following year,

Podrebarac's performance did not improve. Indeed, in May of 2018 at Podrebarac's mid-year review, Thomas again rated Podrebarac's performance as "needing improvement." [*Id.* at ¶ 13.]

After her 2018 performance review, Podrebarac was reassigned to Clinical Nurse Manager Lynette McLaughlin's team, known as "Mod C." [*Id.* at ¶ 14.] Lynette McLaughlin became Podrebarac's "first-line supervisor." [*Id.* at ¶ 2.] At that time, Cecilia Beauprie was chief nurse. [*Id.* at ¶ 3.]

Despite this change in assignment, Hines Hospital staff continued to discipline Podrebarac for her work performance. In June of 2018, Podrebarac received a letter of admonishment for delaying or failing to carry out her assigned duties, failing to follow her supervisor's instructions, and acting inappropriately towards coworkers.[1] [*Id.* at ¶¶ 15–17.] A few months later, in late November of 2018, McLaughlin rated Podrebarac's performance as "minimally satisfactory" and her level of achievement for documentation and reporting as "unacceptable."[2] [*Id.* at ¶ 18.] In her assessment, McLaughlin noted that Podrebarac failed to complete several basic duties of an LPN, like taking a patient's vital signs, performing patient prevention screenings, drawing blood, administering vaccines, and conducting EKGs. [*Id.* at ¶ 19.] McLaughlin additionally noted that Podrebarac would often leave patients in the waiting room, making them late for appointments, and disregard a doctor's instructions regarding patient care. [*Id.*]

---

[1] The letter of admonishment was initially proposed as a one-week suspension but was modified to be a letter of admonishment instead. [Dkt. No. 37 at ¶ 16.]

[2] Beauprie signed off on Podrebarac's performance review. [Dkt. No. 37 at ¶ 18.]

3

Meanwhile, on November 9, 2018, Podrebarac received a complaint that she was creating a hostile work environment, which Hines Hospital staff thereafter investigated in January of 2019. [*Id.* at ¶ 20.] During Podrebarac's interview as part of this investigation, Podrebarac complained about miscommunication, "negative communication," and "unfair treatment from management." [*Id.* at ¶ 22.] Podrebarac did not mention that she believed she was being discriminated against because of her age. [*Id.*] When Podrebarac's coworkers, including a Mod C doctor, four registered nurses, four other LPNs, and a healthcare technician, were interviewed, many complained that Podrebarac was disruptive and aggressive with coworkers, failed to complete assigned tasks, left Mod C without handing off patient work to another Mod C employee, and generally impeded Mod C's operations due to her failure to complete tasks in a timely manner or at all. [*Id.* at ¶¶ 21, 23–24.] The Hines Hospital staff in charge of the investigation recommended that Podrebarac be removed from Mod C and moved to a position within the Hospital not involving patient care. [*Id.* at ¶ 25.]

While the aforementioned investigation was ongoing, in December of 2018, Podrebarac was additionally suspended for a week for failing to complete assigned tasks, including failing to take vitals, complete preventative reminders prior to provider appointments, draw blood, and administer EKGs. [*Id.* at ¶¶ 26–28.] At the related grievance meeting in January of 2019, Podrebarac complained to then-hospital director, Dr. Steven Braverman, that she was being harassed and discriminated against by "Nursing Leadership," and she and her union steward claimed that Mod C was a hostile working environment. [*Id.* at ¶¶ 29–30.] Podrebarac

4

did not mention her age. [*Id.*] Podrebarac later provided an email from Mod C registered nurse, Rebecca Caipal-Lim, which complained of bullying from coworkers. [*Id.* at ¶¶ 29–32.] The email did not allege age discrimination on Caipal-Lam's or Podrebarac's behalf. [*Id.* at ¶ 32.] Braverman eventually sustained Podrebarac's week suspension and concluded that Podrebarac's allegations of a hostile work environment "do not excuse the untimely care administered by her." [*Id.* ¶ 33.]

In April of 2019, McLaughlin and another nurse manager again rated Podrebarac's performance as "needing improvement." [*Id.* ¶ 34.] In May and June of 2019, McLaughlin conducted a fact-finding investigation, called a "Weingarten investigation," into complaints about Podrebarac's treatment of patients, which resulted in serious patient safety issues, and Podrebarac's work performance. [*Id.* ¶ 35.] As part of this investigation, McLaughlin interviewed Podrebarac several times. [*Id.*] In these interviews, Podrebarac blamed the complaints on "miscommunication," not age discrimination. [*Id.* at ¶ 36.]

On October 9, 2019, Beauprie issued a proposed removal letter, charging Podrebarac with careless performance of duties in ten separate patient encounters. [*Id.* at ¶ 37.] The letter detailed five separate occurrences (termed "specifications") of Podrebarac failing to properly care for two patients requiring intervention with oxygen. [*Id.*] In one such instance, Podrebarac failed to provide oxygen for a patient with an oxygen saturation level of 77%, which could have resulted in "severe life

threatening [sic] hypoxia."[3] [*Id.* at ¶ 38.] In another example, Podrebarac failed to provide oxygen to a patient visibly short of breath or notify his provider that he was hypotensive.[4] [*Id.* at ¶ 39.] The letter additionally charged Podrebarac with failing to complete a patient's vitals or predetermined preventative care prior to the patient being seen by their doctor. [*Id.* at ¶¶ 40–42.] The letter noted that Podrebarac failed to administer an injection and perform an EKG, as ordered by the assigned doctor. [*Id.* at ¶ 43.]

On October 15, 2019, Podrebarac met with Candace Ifabiyi (who was then the acting hospital director), a human resources representative, and her union steward to address the proposed removal letter. [*Id.* at ¶¶ 3, 44.] Podrebarac disputed some of the letter's details and complained that she was "being picked on for going to the Union," but never stated that she felt targeted due to her age. [*Id.* at ¶¶ 44–45.] Podrebarac later provided a written response in connection with the proposed removal. [*Id.* at ¶ 46.] None of the documents that Podrebarac submitted complained of age discrimination. [*Id.*]

On October 17, 2019, Ifabiyi issued a final decision to remove Podrebarac, stating that:

> [T]he evidence provided to you supports that you failed to follow proper procedures and proper patient care. Your failure in following proper

---

[3] "Hypoxia" is a condition where a patient has "low levels of oxygen" in her body tissues. *See Hypoxia*, Cleveland Clinic (Apr. 6, 2023, 10:00 AM), https://my.clevelandclinic.org/health/diseases/ 23063-hypoxia.

[4] The description of "hypotensive" indicates that a patient is suffering from abnormally low blood pressure. *See Low blood pressure (hypotension)*, Mayo Clinic (Apr. 6, 2023, 10:00 AM), https://www.mayoclinic.org/diseases-conditions/low-blood-pressure/symptoms-causes/syc-20355465.

6

procedures and providing proper patient care puts Veterans and the Agency at risk. I have also considered your previous discipline of a 7-calendar day suspension and an admonishment for similar behavior and your behavior has not changed.

[*Id.* at ¶¶ 47–48.]

In the discovery phase of this case, Podrebarac repeatedly testified that she was treated differently due to her age but could not articulate why she thought this, simply stating that she "just truly believe[d]" she was discriminated against. [*Id.* at ¶ 57.] Podrebarac could not recall an instance where another Hines Hospital employee mentioned her age and could not state that Beauprie or Ifabiyi knew her age. [*Id.* at ¶¶ 59–60.]

Podrebarac additionally testified that she believed that three younger employees—Maricela Morales, Robert Smith, and Matthew Williams—were treated more favorably, despite having similar performance issues. [*Id.* at ¶ 62.] Podrebarac claimed that each had made errors like she had, like failing to draw blood for lab testing, placing patient information in inappropriate places, and locking Podrebarac out of a supply area. [*Id.* at ¶ 65.] However, Podrebarac argued that Morales, Smith, and Williams were not disciplined for their mistakes. [*Id.*]

Despite these allegations, Podrebarac did not request any information regarding these employees' work performance, including their personnel records. [*Id.* at ¶ 63.] Podrebarac could not identify their ages or recall if any had a declining performance record, serious patient safety issues, or a pattern of failing to complete the duties of an LPN. [*Id.* at ¶¶ 64, 66.] Moreover, Podrebarac could not state if any

7

of the three had ever complained of discrimination during their tenure at Hines Hospital. [*Id.* at ¶ 68.]

Finally, Podrebarac testified that she complained to both the Equal Employment Opportunity ("EEO") office and her supervisors about discrimination unrelated to her termination. [*Id.* at ¶ 67.] Podrebarac could not recall any of the details of such complaints, outside of her EEO complaint filed after her termination, and failed to produce any documentation regarding her complaints to supervisors for unlawful discrimination. [*Id.*]

### B. Procedural Background

On February 7, 2020, Podrebarac filed a formal complaint with the Department of Veterans Affairs for employment discrimination based on age- and race-based discrimination and retaliation, naming Beauprie and Ifabiyi as the responsible management officials.[5] [Dkt. No. 37 at ¶¶ 53–54.] On February 11, 2021, the Veterans Affairs Office of Employment Discrimination denied Podrebarac's complaint. [*Id.* at ¶ 56.]

On May 11, 2021, Podrebarac filed a federal complaint alleging age-based discrimination under the ADEA and retaliation under Title VII and the ADEA. [Dkt. No. 1 at ¶¶ 19–33.] As the basis for her retaliation claim, Podrebarac alleged that she was retaliated against for her "complaints of harassment and hostile work environment" when "co-workers, supervisory agents and representatives of

---

[5] Podrebarac additionally alleged a hostile work environment claim. [Dkt. No. 37 at 931–32.] Because she does not allege this claim in her federal complaint [Dkt. No. 1], the Court does not discuss it further.

8

Defendant . . . [s]ubjected Podrebarac to heightened scrutiny and retaliation by investigation," "[h]arassed and bullied" her, "[d]owngraded Podrebarac's performance evaluations," "[f]abricated performance or conduct issues," "[t]erminated Podrebarac's employment," and "prosecuted [Podrebarac] for returning her PIV card as instructed." [*Id.* at ¶ 20.]

After filing an answer to the complaint and conducting discovery [Dkt. No. 8], the VA filed the present summary judgment motion on October 14, 2022, [Dkt. No. 35–37].[6] In response to Podrebarac's requests for extension, the judge previously assigned to this matter granted Podrebarac two extensions of time to file her response. [Dkt. No. 42, 45.] Podrebarac did not file a response on either extended deadline. Even though she did not request it, this Court granted Podrebarac an additional extension of time until March 31, 2023 to file her response, advising her in a minute order that the Court would "rule on the motion without the benefit of the plaintiff's position" if no response was filed by that date. [Dkt. No. 50.][7]

---

[6] Because Podrebarac was unrepresented at the time, the VA also filed and served a Local Rule 56.2 notice concerning the summary judgment process. [Dkt. No. 38.]

[7] Because Podrebarac has failed to respond to the VA's summary judgment motion, the Court accepts all of the VA's well-pled facts as undisputed and admitted. [Dkt. No. 37]; *see Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (holding that when a nonmovant fails to dispute facts set forth in a movant's 56.1 statement, those facts are deemed admitted for the purposes of summary judgment). While the facts in the VA's Rule 56.1 Statement are undisputed, this does not absolve the Court of its responsibility to determine whether the VA has "show[n] that summary judgment [is] proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant"—here, Podrebarac. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011) (noting that summary judgment may not be granted against the nonmovant when she fails to file a response "as some kind of sanction").

## II. Legal Standard

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). In doing so, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## III. Analysis

### A. Age Discrimination under the ADEA

The Court first considers Podrebarac's age discrimination claim under the ADEA. While Podrebarac has failed to respond to the VA's summary judgment motion, the VA, as the movant, retains the burden to demonstrate that it is entitled to judgment as a matter of law. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (internal quotation marks and citation omitted) ("Even where a nonmovant fails to respond to a motion for summary judgment, the movant still had to show that summary judgment [is] proper given the undisputed facts . . . with those facts taken as usual in the light most favorable to the nonmovant.").

To prove age discrimination under Title VII or the ADEA, the evidence, taken as a whole, must be such that "reasonable factfinder [could] conclude that [Podrebarac's age] caused [her] discharge or other adverse employment action." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see Carson v. Lake Cnty., Ind.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claims). While the Seventh Circuit in *Ortiz* sought to eliminate district courts' practice of distinguishing between "direct" and "indirect" evidence, *Ortiz*, 834 F.3d at 765, the *McDonnell Douglas* burden-shifting framework remains a useful method to analyze discrimination claims, *see David v. Bd. of Tr. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) ("[B]oth before and after *Ortiz, McDonnell Douglas* is a means of organizing, presenting, and assessing circumstantial evidence . . . in discrimination cases."). *See also Carson*, 865 F.3d at 532–33 (citing *Ortiz* while noting that a plaintiff alleging ADEA discrimination may still "proceed through the burden-shifting framework adapted from *McDonnell Douglas*"). As the VA utilizes this framework in its briefing, the Court similarly will analyze Podrebarac's claims using this structure. [*See generally* Dkt. No. 36.]

To establish a *prima facie* case under the *McDonnell Douglas* framework, Podrebarac must show that: (1) she is a member of a protected class, (2) her job performance met the VA's legitimate expectations, (3) she suffered an adverse employment action, and (4) other similarly situated individuals who were not members of a protected class received more favorable treatment compared to her. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Tubergen v. St.*

*Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008). If Podrebarac can establish a *prima facie* case, the burden shifts to the VA to articulate a legitimate, non-discriminatory reason for Podrebarac's termination, which Podrebarac may then attack as pretext. *McDonnell Douglas*, 411 U.S. at 802; *Tubergen*, 517 F.3d at 476.

The Court starts its analysis with Podrebarac's *prima facie* case. The VA does not dispute that Podrebarac belonged to a protected class (persons over the age of forty) and suffered an adverse employment action (multiple suspensions and termination). [*See generally* Dkt. No. 36]; *see Ortiz*, 834 F.3d at 765 (defining "discharge" or termination as an "adverse employment action"); *Adantus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008) (noting that suspensions constitute an adverse employment action). As such, the Court, like the VA, concerns itself with the remaining two facts: whether Podrebarac met the VA's legitimate expectations and whether other similarly situated individuals who were not members of a protected class received more favorable treatment. *McDonnell Douglas*, 411 U.S. at 802. Failure to meet either requirement dooms Podrebarac's case. *See Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005) ("The failure to establish any one of the initial four elements defeats a discrimination claim.").

The Court need not go far to conclude that Podrebarac's *prima facie* burden is not met: the VA has demonstrated that there is no genuine issue of material fact regarding whether Podrebarac met the VA's legitimate job expectations. The Court assesses this element by determining whether Podrebarac was performing well

12

enough to meet the VA's legitimate job expectations at the time of the challenged adverse employment actions. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 635 (7th Cir. 2009). Given the record at hand, Podrebarac was not meeting her job expectations. The undisputed facts show that Podrebarac had repeated performance issues over a period of years, culminating in her eventual termination. [*See generally* Dkt. No. 37 at ¶¶ 9–48.] At the time of each of Podrebarac's suspensions in May of 2017 and December of 2018, Podrebarac had repeatedly failed or refused to complete assigned tasks and instructions ordinarily carried out by an LPN. [*Id.* at ¶¶ 10–12, 26–28.] When the VA informed Podrebarac of her declining performance, she failed to improve. *See Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011) (observing that the plaintiff employee failed to meet his employer's legitimate expectations where he was rated unsatisfactory and remained rated as such, despite having received reprimands to improve his work performance). Even crediting Podrebarac's complaints that there were instances of miscommunication, Podrebarac underperformed throughout the period of both suspensions, as evidenced by her subpar performance reviews and complaints from co-workers before and after each suspension. [*Id.* at ¶¶ 9–12, 18–20, 26–28, 34.]

This pattern continued up to Podrebarac's termination. Approximately two weeks before Podrebarac's termination, Hines Hospital employees again complained that Podrebarac failed to properly care for patients, complete assigned tasks, or follow a provider's instructions in ten separate instances, leading to serious patient safety issues. [*Id.* at ¶¶ 37–43.] Indeed, Podrebarac's removal letter noted that despite her

13

"previous discipline," Podrebarac's failure "to follow proper procedures and [provide] proper patient care" had remained "[un]changed." [*Id.* at ¶ 48.] The undisputed evidence shows that there is no genuine issue of material fact that Podrebarac failed to meet the VA's legitimate job expectations, given her declining work performance. *McDonnell Douglas*, 411 U.S. at 802.

While the Court's conclusion concerning the VA's legitimate expectations is dispositive of Podrebarac's age discrimination claim, *see Bio*, 424 F.3d at 596, the Court also concludes that there is no genuine issue of material fact regarding whether Podrebarac's chosen comparators received more favorable treatment.

The Court begins this inquiry by determining whether the plaintiff's chosen comparator is similarly situated. *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009) ("Although whether a comparator is similarly situated is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that plaintiff[] . . . met [her] burden on the issue.") For another employee to be similarly situated to the plaintiff, there must be "enough common features between the individuals to allow a meaningful comparison." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008). While Podrebarac's chosen comparators need not be identical, they must be "directly comparable to her in all material respects." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). In this inquiry, the Court should "eliminate other possible explanatory variables such as differing roles, performance histories, or decision-making personnel, in order to isolate the critical independent variable of

14

discriminatory animus." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017).

The undisputed facts show that the three potential comparators—Morales, Smith, and Williams—that Podrebarac pointed to in discovery are not similarly situated for a few reasons. At the outset, the Court notes that, based on the record before it, it knows very little about Morales, Smith, and Williams. As the VA aptly observes [Dkt. No. 36 at 7], Podrebarac did not propound discovery regarding their ages and could not testify to their ages at her deposition, [Dkt. No. 37 at ¶¶ 63–64]. As a result, there is no record evidence that demonstrates that any of the three were in fact younger or not part of a protected group, as required for Podrebarac's *prima facie* showing. *McDonnell Douglas*, 411 U.S. at 802.

More importantly, the Court knows scarcely more about their performance histories to determine whether they were similarly situated to Podrebarac. *Reed*, 869 F.3d at 549 (noting an employee's "performance history[y]" as a factor to consider in the similarly situated analysis). With the information at the Court's disposal, it must conclude that Morales, Smith, and Williams are not similarly situated comparators. Podrebarac testified that Morales, Smith, and Williams were treated more favorably because the VA did not reprimand them for making certain errors, like failing to draw blood for lab testing, placing patient information in inappropriate places, and, in one instance, locking Podrebarac out of a supply area. [Dkt. No. 37 at ¶¶ 62, 65.]

Putting aside whether Morales, Smith, and Williams were in fact younger, there is no evidence supporting that any of the three had "a comparable set of failings"

15

when compared to Podrebarac and thus are "similarly situated." *See Burks*, 464 F.3d at 751 ("[I]n order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a comparable set of failings." (internal quotation marks omitted)); *see also Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008) (finding that employees with fewer instances of poor performance compared to the plaintiff were not "similarly situated" for purposes of comparator analysis). While Podrebarac identified one to two instances of on-the-job errors, there is no record evidence that Morales, Smith, and Williams had the same record of repeated errors and declining performance that Podrebarac had. When contrasted with Podrebarac's multiple failing performance reviews, two suspensions, and consistent criticism by both co-workers and superiors, the Court cannot conclude that the one-off errors that Podrebarac pointed to her in testimony establish that Morales, Smith, and Williams are similarly situated to her. As such, the Court concludes that there is no genuine issue of material fact that similarly situated Hines Hospital employees received more favorable treatment. *McDonnell Douglas*, 411 U.S. at 802.

Even if Podrebarac was successful in meeting her initial *prima facie* burden, the VA has provided a legitimate, non-discriminatory reason for termination: Podrebarac's work performance. [Dkt. No. 37 at ¶¶ 47–48]; *McDonnell Douglas*, 411 U.S. at 802. Poor work performance can serve as a legitimate, non-discriminatory reason for termination. *See Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir. 1999) (holding that an employee's poor work performance is a legitimate, non-discriminatory reason for termination). As discussed above, Podrebarac's

16

performance at the time of each of the challenged adverse actions was declining, resulting in complaints, poor performance reviews, an investigation into her work activities, and her eventual termination. [*See generally* Dkt. No. 37 at ¶¶ 9–48.] Additionally, there is no evidence that the VA did not honestly believe that Podrebarac was underperforming, so as to support pretext. *See Burks,* 464 F.3d at 754. Accordingly, the Court concludes that even if Podrebarac had met her initial *prima facie* burden, the VA had a legitimate, non-discriminatory reason for termination.

For the reasons above, the Court grants McDonough's summary judgment motion as it relates to Podrebarac's age discrimination claim.

### B.     Age Retaliation under Title VII and the ADEA

The Court next considers Podrebarac's age retaliation claim under Title VII and the ADEA. Title VII proscribes an employer from retaliating against an employee who has engaged in statutorily protected activity. *See* 42 U.S.C. § 2000e-3(a). To survive summary judgment, Podrebarac "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [VA] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). Much like Podrebarac's discrimination claim, the Court must consider the evidence as a whole to determine whether "the record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that

17

retaliatory motive caused the [materially adverse action]." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Ortiz*, 834 F.3d at 765).

As the VA suggests [Dkt. No. 36 at 14], the Court need not go beyond the first step to conclude that summary judgment is proper, as there is no record evidence supporting that Podrebarac engaged in a protected activity. Internal complaints to an employer, union grievances, and EEO complaints can constitute protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006) (holding that EEO and internal complaints to an employer can constitute statutorily protected activity); *see also Lang v. Illinois Dep't of Child. & Fam. Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) (holding that union grievances can amount to statutorily protected activity). However, for a complaint to qualify as "statutorily protected activity," it "must be *about* the [challenged] discrimination." *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022) (emphasis added). While "an employee need not use . . . magic words," like "age," *see Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003), "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient," *Tomanovich*, 457 F.3d at 663. *See also Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000) (holding that the plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a *general* displeasure" with lower pay, not discrimination related to a protected class (emphasis in original)).

18

Here, Podrebarac did not engage in protected activity.[8] In performance review meetings, Podrebarac complained of miscommunication, "negative communication" or "negativity," and "unfair treatment from management." [Dkt. No. 37 at ¶¶ 22, 36, 44–45, 61.] No record evidence shows that she ever discussed age discrimination at these meetings. [*Id.*] Similarly, when Podrebarac complained of a "hostile work environment" in December of 2018 and that she was being "picked on" for her union activity, she did not say that she believed she was being discriminated against due to age. [*Id.* at ¶¶ 30–32, 44–45.] While Podrebarac need not use "magic words," (*e.g.*, "age" or "old,") she has failed to meaningfully connect her complaints to her age at the time she made them. *Sitar*, 344 F.3d at 727. Rather, these complaints can be more accurately characterized as general ones regarding the workplace, unconnected to a protected status. They do not amount to protected activity. *Tomanovich*, 457 F.3d at 663.

The Court notes that, when Podrebarac was deposed, she testified that at one point during her employment at Hines Hospital, she believed she complained to her supervisors and to EEO about age discrimination. [Dkt. No. 37 at ¶ 67.] When

---

[8] In her complaint, Podrebarac alleges that she was retaliated against through in on-the-job harassment and eventual termination. [Dkt. No. 1 at ¶ 20.] As a result, her EEO complaint filed *after* her termination cannot qualify as protected activity, as there is no "retaliation" alleged after her termination that could potentially qualify for this claim. [Dkt. No. 37 at ¶¶ 53–54]; *see also* 42 U.S.C. § 2000e–3(a); *Mollet v. City of Greenfield*, 926 F.3d 894, 897 (7th Cir. 2019) (noting that the protected activity must be the but-for cause of the alleged adverse employment action). Podrebarac's allegation that she was "prosecuted for returning her PIV card as instructed" is unsupported by record evidence. [Dkt. No. 1 at ¶1.] The Court need not address conclusory allegations. *See Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892–93 (7th Cir. 2003) ("Conclusory allegations alone cannot defeat a motion for summary judgment.").

19

questioned further, Podrebarac was unable to identify when she made such complaints or who specifically she complained to. [*Id.*] She further failed to produce any documents memorializing the complaints. [*Id.*] These allegations are speculative, and they fail to demonstrate a genuine issue of material fact sufficient to avoid summary judgment. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021) (noting that a "party must present more than mere speculation or conjecture to defeat a summary judgment motion"). Based on this sparse record, the Court cannot conclude that Podrebarac engaged in statutorily protected activity. As a result, the Court grants the VA's motion on Podrebarac's age-based retaliation claim under Title VII and the ADEA.

**IV. Conclusion**

For the reasons stated above, the Court grants the VA's motion for summary judgment. [Dkt. No. 35.] A final judgment consistent with Federal Rule of Civil Procedure 58 will enter in favor of Defendants and against Plaintiff. Civil case terminated.

Enter: 21-cv-2552

Date: April 12, 2023

_____
Lindsay C. Jenkins
United States District Judge